Joel Z. Schwarz (NV Bar No. 9181)
SALTZMAN MUGAN DUSHOFF
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500
Email: jschwarz@nvbusinesslaw.com

Justin M. Pearson*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, Florida 33131
Tel: (305) 721-1600
Email: jpearson@ij.org

Paul M. Sherman*
Elizabeth L. Sanz*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
Email: psherman@ij.org
bsanz@ij.org

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**LAS VEGAS DIVISION**

MICHELLE PRZYBOCKI, *et al.*,

*Plaintiffs*,

vs.

UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,

*Defendants.*

Case No. 2:23-cv-00455-ART-DJA

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

INTRODUCTION ..... 1

STATEMENT OF THE FACTS AND PROCEDURAL BACKGROUND ..... 2

LEGAL STANDARD ..... 7

ARGUMENT ..... 7

I. Plaintiffs are likely to succeed on the merits ..... 8

A. Defendants likely cannot meet their burden because the First Amendment does not tolerate blanket bans on whole categories of verifiably true speech ..... 8

B. The government also cannot meet its *Central Hudson* burdens ..... 10

1. The FODMAP-related speech at issue concerns lawful activity, is verifiably true, and is not inherently misleading ..... 11

2. The Ban does not directly advance a substantial government interest ..... 12

3. The Ban is more extensive than necessary ..... 14

II. Plaintiffs have established irreparable injury in the absence of a preliminary injunction ..... 15

III. The balance of the equities tips in Plaintiffs' favor, and the public interest will be served by a preliminary injunction ..... 16

IV. Complete relief for Plaintiffs requires an injunction that applies to Gourmend and all low-FODMAP food producers ..... 16

V. No bond should be required ..... 19

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ........ 13

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749 (9th Cir. 2019) ........ 16

*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) ........ 15

*Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719 (C.D. Cal. 1996) ........ 19

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ........ 7

*Bates v. State Bar of Ariz.,* 433 U.S. 350 (1977) ........ 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) ... *passim*

*Chi. Women in Trades v. Trump*, 2025 WL 3034056 (N.D. Ill. Oct. 30, 2025) ........ 17

*Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100 (2025) ........ 17

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ........ 7

*Edenfield v. Fane*, 507 U.S. 761 (1993) ........ 9, 10, 13

*Elrod v. Burns*, 427 U.S. 347 (1976) ........ 15

*Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162 (9th Cir. 2025), *cert. granted in part on other grounds*, 146 S. Ct. 2812 (2026) ........ 17–18

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ..... 7

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ........ 7

*Ibanez v. Fla. Dep't of Bus. & Prof. Regul.*, 512 U.S. 136 (1994) ........ 10, 13

*Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628 (6th Cir. 2010) ........ 14

*Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109 (9th Cir. 2023) ........ 11, 13

*NetChoice, LLC v. Bonta*, 152 F.4th 1002 (9th Cir. 2025) ........ 15

*Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228 (11th Cir. 2017) ........ 11, 12, 14

*Peel v. Att'y Registration & Disciplinary Comm'n*, 496 U.S. 91 (1990) ........ 8, 9, 11

*Przybocki v. U.S. Dep't of Agric.*, 185 F.4th 891 (9th Cir. 2026) ........ *passim*

*In re R.M.J.*, 455 U.S. 191 (1982) ........ 8, 9

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) .......... 10, 13, 15

*Shell Offshore, Inc., v. Greenpeace, Inc.*, 709 F.3d 1281 (9th Cir. 2013) .......... 16

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002) .......... 10

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) .......... 16, 17, 18, 19

*Trump v. Hawaii*, 585 U.S. 667 (2018) .......... 19

*Cal. ex rel. Van de Kamp v. Tahoe Reg'l Plan. Auth.*, 766 F.2d 1319 (9th Cir. 1985) .......... 19

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Counsel, Inc.*, 425 U.S. 748 (1976) .......... 9, 10

*Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025) .......... 17

*Winter v. NRDC*, 555 U.S. 7 (2008) .......... 7

*X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024) .......... 16

*Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626 (1985) .......... 15

**RULES**

Fed. R. Civ. P. 65(a) .......... 1

**CODES & STATUTES**

9 C.F.R. § 317.300 .......... 4

9 C.F.R. § 317.309 .......... 4

9 C.F.R. § 317.313 .......... 4

9 C.F.R. § 317.369 .......... 4

9 C.F.R. § 412.1 .......... 4

9 C.F.R. § 500.8 .......... 4

21 C.F.R. pt. 105 .......... 3

21 C.F.R. pt. 107 .......... 3

21 C.F.R. § 101.9 .......... 3

21 C.F.R. § 101.13 .......... 3

21 C.F.R. §§ 101.54–67 .......... 3

21 C.F.R. §§ 101.54–69 .......... 3

21 C.F.R. § 101.69 .......... 3

21 U.S.C. § 321 .......... 3

21 U.S.C. § 343 .......... 3, 5, 13

21 U.S.C. § 602 .......... 3

21 U.S.C. § 607 .......... 4

**OTHER AUTHORITIES**

Cleveland Clinic, *FODMAP Diet*, https://my.clevelandclinic.org/health/treatments/22466-lowfodmap-diet .......... 2

*Formal Agreement Between USDA and FDA Relative to Cooperation and Coordination*, Food & Drug Admin. (Jan. 30, 2018), https://www.fda.gov/food/international-interagency-coordination/formal-agreement-between-usda-and-fda-relative-cooperation-and-coordination [https://perma.cc/RTN6-TKDY] .......... 3–4

Hazel Galon Veloso, M.D., *FODMAP Diet: What You Need to Know*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/wellness-and-prevention/fodmap-diet-what-you-need-to-know .......... 2

NIH, *Digestive Diseases Statistics for the United States,* https://www.niddk.nih.gov/health-information/health-statistics/digestive-diseases .......... 4

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Michelle Przybocki, Ketan Vakil, and Gourmend Foods, LLC ("Plaintiffs"), by and through undersigned counsel, hereby move the Court, pursuant to Fed. R. Civ. P. 65(a), to enter a preliminary injunction enjoining Defendants from enforcing their blanket prohibition on truthful, verifiable, non-misleading nutrient content claims relating to certain nutrients known as FODMAPs. Plaintiffs seek this relief on the grounds that enforcement of these regulations violates the First Amendment. Plaintiffs request oral argument on this motion because it poses constitutional questions of great public importance.

This motion is supported by the following Memorandum of Points and Authorities, the Declarations of Michelle Przybocki and Ketan Vakil, and supporting exhibits, and any oral argument or hearing. Prior to filing this motion, Plaintiffs' counsel conferred with Defendants' counsel. Defendants oppose the motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This is a First Amendment challenge to vindicate the right to receive and convey helpful, factual, verifiable information about the nutritional content of food—specifically, information about difficult-to-digest sugars known by the acronym "FODMAP." Plaintiff Michelle Przybocki is a consumer who suffers from severe digestive problems and whose quality of life would dramatically improve if FODMAP-related nutrient content claims could be included on food labels. Plaintiff Ketan Vakil, through his business Gourmend Foods, LLC ("Gourmend"), is among the numerous sellers who want to convey this same information on their food labels to Michelle and millions of other consumers. But federal law does not allow it.

To remedy this harmful censorship of factual information, Michelle (as a listener) and Ketan and Gourmend (as speakers) filed this lawsuit against the federal agencies and officials who are required by federal law to enforce it. They do not seek compensatory damages but merely seek prospective relief so that FODMAP-related

information can finally be provided on food labels.

This case returns to this Court after the Ninth Circuit partly reversed this Court's dismissal. *See* ECF 52 (dismissal order); *Przybocki v. U.S. Dep't of Agric.*, 185 F.4th 891 (9th Cir. 2026). The mandate issued September 25, 2026. Remanded are Michelle's claims against all Defendants and Ketan and Gourmend's FDA-related claim. Because Michelle, Ketan, and Gourmend are suffering per se irreparable injury to their free-speech rights, are likely to succeed on their First Amendment claims as listener and speakers, and meet all the requirements for a preliminary injunction, they now ask this Court to preliminarily enjoin enforcement of the government's blanket prohibition on FODMAP-related nutrient content claims.

## STATEMENT OF THE FACTS AND PROCEDURAL BACKGROUND

Like tens of millions of Americans, Plaintiffs Michelle Przybocki and Ketan Vakil suffer from digestive conditions. To mitigate their symptoms, their doctors gave them the same mainstream medical advice that doctors give to people all across the United States who suffer from digestive disorders: Avoid specific foods that are difficult to digest.[1] These foods are referred to as high-FODMAP. "FODMAP" is an acronym for the types of sugars that are most difficult to digest (fermentable oligosaccharides, disaccharides, monosaccharides, and polyols). Foods that are low in these FODMAP sugars are referred to as low-FODMAP foods.

When Ketan learned about low-FODMAP foods, he chose to be part of the solution by creating a low-FODMAP food business. Vakil decl. ¶¶ 13–14. Gourmend offers low-FODMAP spice blends and broths, all of which are lab-tested and certified low-FODMAP. *Id.* at ¶ 16. For years, Gourmend's foods have been certified by the world's leading low-FODMAP certifier, Australia's Monash University. *Id.* at ¶ 17. Recently, Gourmend obtained a *second* independent certification for its foods from

---

[1] *See* Cleveland Clinic, *FODMAP Diet*, https://my.clevelandclinic.org/health/treatments/22466-lowfodmap-diet; Hazel Galon Veloso, M.D., *FODMAP Diet: What You Need to Know*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/wellness-and-prevention/fodmap-diet-what-you-need-to-know.

Fodmap Friendly, a renowned low-FODMAP organization that has partnered with the University of Michigan. *Id.* at ¶¶ 20–22. So, when Gourmend's labels say that its foods have been certified "Low-FODMAP," it is telling the verified truth.

But none of these undisputed facts are allowed to matter to Defendants.[2] Federal law prohibits food makers like Gourmend from including FODMAP-related nutrient content claims on food labels—no matter how truthful, verifiable, and helpful the information might be.

The Ninth Circuit explained the governing regulatory framework as follows:

> Two different federal agencies, the FDA and the USDA (with the assistance of its subagency the FSIS), administer and enforce federal food-labeling laws. Under the Food, Drug, and Cosmetic Act, the FDA regulates false or misleading statements on most nonmeat food labels. *See* 21 U.S.C. §§ 321, 343. The applicable statutes and regulations mandate disclosures regarding certain nutrients, such as the number of calories and the amount of protein and carbohydrates. *See* 21 U.S.C. § 343(q); 21 C.F.R. §§ 101.9(c), 101.13(b). For example, a food label must disclose the "[t]otal fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein" in that food. 21 U.S.C. § 343(q)(1)(D). Federal regulations also permit companies to make certain "nutrient content claims" on food labels. 21 C.F.R. § 101.13. A nutrient content claim describes the level of a specific nutrient in a food, such as "low sodium." *Id.* But a food company may not make nutrient content claims other than those specifically defined and permitted by statute or FDA regulations. *See id.* § 101.13(b); 21 C.F.R. pt. 105 (establishing regulations for "special dietary use" foods without including FODMAPs); 21 C.F.R. pt. 107 (establishing regulations for infant formula labels); 21 C.F.R. §§ 101.54–69 (establishing additional regulations for "nutrient content claims"). The regulations define nutrient content claims for various nutrients, including "fat," "sugar" and "cholesterol," but they do not define nutrient content claims for FODMAPs. 21 C.F.R. §§ 101.54–67. If an entity wishes to make a nutrient content claim that is not already defined by the regulations, the entity may petition the FDA for approval of the new nutrient-content claim. *Id.* § 101.69.
>
> The USDA, rather than the FDA, regulates the labeling of certain other meat, poultry, and egg products. *See* 21 U.S.C. § 602; *Formal Agreement Between USDA and FDA Relative to Cooperation and Coordination*, Food

[2] As to Gourmend's products, FDA regulates its chicken broth, vegetable broth, and spice blends, and USDA regulates its beef broth.

> & Drug Admin. (Jan. 30, 2018), https://www.fda.gov/food/international-interagency-coordination/formal-agreement-between-usda-and-fda-relative-cooperation-and-coordination [https://perma.cc/RTN6-TKDY]. As with the FDA's regulatory regime, the statutes and regulations enforced by the USDA require nutritional labeling. *See, e.g.*, 9 C.F.R. § 317.300(a) ("Nutrition labeling must be provided for all meat and meat food products intended for human consumption and offered for sale … ."); *see also id.* § 317.309(c). Also like the FDA, the USDA regulates additional nutrient-content claims, *see id.* § 317.313(a)–(b), (e), and provides an application process for those seeking to make new nutrient-content claims, *id.* § 317.369.
>
> While product marketers do not need advance approval for products whose labels are regulated by the FDA, a meat or meat-product label subject to the USDA's jurisdiction cannot be used until the USDA, through the FSIS, has granted it approval. *See* 21 U.S.C. § 607(e); 9 C.F.R. §§ 412.1(a), 500.8. As a result, any proposed product label making "nutrient content claims" and subject to the USDA's regulatory jurisdiction must receive affirmative approval from USDA before it can be used. *See* 9 C.F.R. § 317.313(a)–(b).

*Przybocki*, 185 F.4th at 894–95.

In short, the regulatory framework constitutes a ban on FODMAP-related nutrient content speech (the "Ban"). Moreover, the Ban makes it extremely difficult for consumers like Michelle to determine which foods are low-FODMAP because different *parts* of the same ingredient can be low- or high-FODMAP, so ingredient lists alone are not enough. The result is that the lack of low-FODMAP information on food labels is negatively impacting Michelle's quality of life and health, including her ability to follow her doctor's advice. Przybocki decl. ¶ 15. The same is true for tens of millions of other Americans. *See* NIH, *Digestive Diseases Statistics for the United States*, https://www.niddk.nih.gov/health-information/health-statistics/digestive-diseases (finding that 60 to 70 million Americans suffer from digestive disorders).

Worse, this helpful information is banned for no legitimate reason. When USDA officials, after consulting with FDA, rejected Gourmend's beef broth label, they did not say that Gourmend's "Low-FODMAP" claim would mislead anyone, that Gourmend's products were not low-FODMAP, or that the certification was inadequate to show that

Gourmend's "Low-FODMAP" claim is truthful. Instead, they rejected it because "Low-FODMAP" is a nutrient content claim that is not defined in federal law and is therefore automatically banned. Vakil decl. ¶¶ 35–48. In fact, it appears that every government official responsible for enforcing the Ban would be perfectly fine with allowing this low-FODMAP information to be provided on food labels if only it were allowed by federal law. *Id.* Indeed, other federal laws already prohibit misleading speech on food labels, rendering the Ban a redundant cause of nothing but harm. *See* 21 U.S.C. § 343(a)(1), (b), (c), (d).

Consequently, Michelle, Ketan, and Gourmend sued Defendants under the First Amendment. Michelle brought her claim as a listener—a recipient of this vital information—identifying as willing speakers Gourmend, Ketan, and other unnamed food producers who would include low-FODMAP nutrient content claims on their labels but for the Ban. Ketan and Gourmend brought their claims as speakers.

Defendants moved to dismiss on a long list of grounds. ECF 37. This Court found Plaintiffs had plausibly alleged a ban on low-FODMAP statements in product labeling but nevertheless dismissed all of the claims: Michelle's listener claims against all Defendants on standing grounds for failing to allege willing speakers; Ketan and Gourmend's FDA-related speaker claim on standing grounds for insufficient injury because they were selling some FODMAP-labeled products and had not received any warning letters or threats from FDA; and Ketan and Gourmend's USDA-related claim for failure to exhaust administrative remedies. ECF 52. The Ninth Circuit reversed on all but Ketan and Gourmend's USDA claim and remanded. *Przybocki*, 185 F.4th at 903.

As to Michelle's claims as a listener, the Ninth Circuit held that Michelle had standing for two independent reasons.

First, the Ninth Circuit held that Michelle had properly pleaded Ketan and Gourmend as willing speakers. In doing so, the Ninth Circuit explained that it does not matter whether Michelle can learn the relevant information online because the

First Amendment protects consumers' right to decide on the method of communication that works best for them. *Id.* at 899–900. Moreover, the Ninth Circuit pointed out that this choice is especially important here because "consumers of food products often have a continuing interest in the nutritional information that is provided on the products' labels, given that their use of the products may occur long after the time of purchase." *Id.*

Second, the Ninth Circuit also held that Michelle had properly pleaded the existence of other willing speakers too. *Id.* at 899. The panel held that Michelle did not need to specifically identify those additional speakers at this stage, as "commonsense economic realities" would lead to "predictable" behavior here:

> Given the prevalence of FODMAP-related digestive disorders today, one can plausibly infer that consumers, perhaps numbering in the tens of millions, want food labels to contain information about FODMAP levels. And given this consumer demand, the plaintiffs plausibly allege that food sellers "want to convey [ ] low-FODMAP information to Michelle [Przybocki] and other customers" because those food sellers would "stand[ ] to profit" by doing so. *Id.* at 728. We can also reasonably infer that food producers are not currently labeling their products with FODMAP information because they understand the regulations to prohibit such labels.

*Id.* at 900.

The Ninth Circuit also held that speaker Plaintiffs Ketan and Gourmend can proceed on their pre-enforcement, FDA-related claims. In doing so, the panel explained that Ketan and Gourmend more than met the First Amendment requirement of showing that their speech "arguably falls within the statute's reach." *Id.* at 902. The panel also found that Ketan and Gourmend had alleged a sufficiently specific threat of enforcement by FDA because, when considering (and rejecting) the label for Gourmend's beef broth, officials at USDA consulted with officials at FDA, who agreed that the FODMAP-related claims were undefined nutrient content claims, and FDA refused to disavow enforcement. *Id.* The panel further found that Ketan and Gourmend had altered their speech because of the censorship, that Ketan and

Gourmend were actively violating the Ban, and that FDA has a history of taking enforcement actions against this type of violation. *Id.* at 902–03.

On remand, Michelle, Ketan, and Gourmend now ask this Court to enter injunctive relief halting for the duration of this lawsuit the daily, per se irreparable harm being suffered by Plaintiffs and tens of millions of other Americans.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The "burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Thus, if Plaintiffs make "a colorable claim that [their] First Amendment rights have been infringed, or are threatened with infringement, … the burden shifts to the government to justify the restriction." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014). If the government is not able to meet its burden, then Plaintiffs' likelihood of success on a First Amendment challenge means that the other prongs of the preliminary injunction analysis are presumed satisfied. *See Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

## ARGUMENT

A preliminary injunction is warranted here. A mountain of on-point precedent shows that this Ban on truthful, factual, verifiable commercial speech likely violates the First Amendment rights of Michelle as a listener and Ketan and Gourmend as speakers. Moreover, the likelihood of success on a First Amendment claim also establishes the rest of the preliminary injunction factors.

If this Court agrees that the factors have been met, then the Court should afford complete relief to all Plaintiffs. For Ketan and Gourmend, this just means enjoining enforcement against them. But for Michelle, as a listener, this means providing relief

that will allow Michelle access to all of the same speech that would happen if the Ban did not exist.

Finally, since this injunction would merely halt an ongoing First Amendment violation, Plaintiffs ask this Court to follow the standard practice for First Amendment preliminary injunctions of not requiring a bond to be posted.

## I. Plaintiffs are likely to succeed on the merits.

Under the precedent, this Court can choose between two paths, but each leads to the same unconstitutional result. The Court can either follow the precedent saying that bans on truthful commercial speech automatically violate the First Amendment and therefore the Court does not need to reach the *Central Hudson* test, or the Court can follow the precedent saying that, in practice, bans on truthful commercial speech always fail the *Central Hudson* test, so the Court does not need to reach the question of whether the *Central Hudson* test even needs to be applied. Either way, the Ban is unconstitutional, so Plaintiffs are likely to succeed on the merits.

### A. Defendants likely cannot meet their burden because the First Amendment does not tolerate blanket bans on whole categories of verifiably true speech.

This Court could choose to enjoin the Ban's enforcement on the straightforward basis that the Ban completely prohibits verifiably true speech, which the First Amendment simply does not tolerate. "[The government] may not … completely ban statements that are not actually or inherently misleading," like the verifiably true FODMAP-related nutrient content claims here. *Peel v. Att'y Registration & Disciplinary Comm'n*, 496 U.S. 91, 110 (1990) (plurality op.). Even when information is *potentially* misleading (which the low-FODMAP information is not), "that potential does not satisfy [Defendants'] heavy burden of justifying a categorical prohibition against the dissemination of accurate factual information to the public." *Id.* at 109 (citing *In re R.M.J.*, 455 U.S. 191, 203 (1982)).

*Peel* is directly on point, as it addressed the question of when a private, third-

party certification can be included in commercial speech. In *Peel*, an attorney wanted to advertise his National Board of Trial Advocacy certification as a trial specialist, despite Illinois Bar Association rules that only allowed lawyers to advertise Bar certifications. 496 U.S. at 93–96. The U.S. Supreme Court agreed with the attorney that the restriction violated the First Amendment, and the opinion is divided between a plurality and concurrence that focused on different grounds for the ruling. *Id.* at 93–117. In so doing, the Supreme Court laid out the two paths before this Court here, but both achieve the same result. The plurality held that the Court did not need to reach the *Central Hudson* test because commercial speech that is not inherently misleading can never be banned, *id.* at 109–10, while the concurrence held that the government could not meet its *Central Hudson* burdens, *id.* at 111–17.

The *Peel* plurality relied heavily on *In re R.M.J.*, and *Bates v. State Bar of Arizona,* 433 U.S. 350 (1977), both of which explained that the government can never ban truthful commercial speech. *Peel*, 496 U.S. at 109–10. This is because, even in situations where truthful speech is potentially misleading, that issue can be cured by providing more context in the form of additional speech, which is always preferable under the First Amendment to a ban. *See id.*

If ever there were a time to apply the straightforward approach from the *Peel* plurality, *In re R.M.J.*, and *Bates*, it is here. Indeed, the regulations at issue here forbid entire categories of speech instead of the narrower bans at issue in those cases. Moreover, the regulations at issue here turn the First Amendment on its head by taking a ban first, ask questions later approach. *See Edenfield v. Fane*, 507 U.S. 761, 773–77 (1993) (explaining that "prophylactic" bans on speech are not allowed).

Michelle's claim further illustrates why the Ban's blanket restriction on verifiably true commercial speech is so offensive to the First Amendment. Her physical well-being is at stake in much the same way as the consumer plaintiffs dealing with the narrower and less offensive restriction in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Counsel, Inc.*, 425 U.S. 748 (1976). There, Virginia

prohibited drug price advertising by pharmacists, and the Court struck down that ban based on the plaintiffs' rights as drug users to receive drug price information. *Id.* at 756. In doing so, the Court recognized that, for consumers with ailments, access to factual information is "more than a convenience"; rather, it could "mean the alleviation of physical pain." *Id.* at 764. So too for Michelle, who suffers debilitating pain when she consumes FODMAPs. Przybocki decl. ¶¶ 3–7. Knowing the FODMAP content of food is more than a convenience; it is essential. And the Ban here is more than paternalistic; it is actively harmful. Because the Ban is an outright prohibition on verifiably true speech, it violates the First Amendment, full stop, and this Court should enjoin Defendants from enforcing the Ban on that basis.

### B. The government also cannot meet its *Central Hudson* burdens.

The Court's other option is to follow the line of precedent that applied the *Central Hudson* test to commercial speech bans and then concluded that, in practice, the government can never meet its *Central Hudson* burdens for bans on non-inherently misleading commercial speech because even in the rare situations where the government can meet its heavy burden of providing "concrete" evidence of potential confusion, the potential confusion can always be cured by more speech instead of less. *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) (holding that ban on providing alcohol content on beer labels failed *Central Hudson*); *Edenfield*, 507 U.S. at 770–71; *see also Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002) (holding that ban on compound drug advertisements failed *Central Hudson*); *Ibanez v. Fla. Dep't of Bus. & Prof. Regul.*, 512 U.S. 136 (1994) (holding that ban on "certified financial planner" advertising unless the certification was given by the government failed *Central Hudson*).

Under this approach, the threshold inquiry is whether the regulated speech is inherently misleading or concerns unlawful activity. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980). The government bears the entire burden, and if the answer to the threshold question is no, then the government's

burden becomes to "show that the [restriction] directly and materially advances a substantial governmental interest and that 'it is not more extensive than is necessary to further that interest.'" *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1116 (9th Cir. 2023). Once a challenge survives the threshold question, if the government fails to meet any one of these burdens, the restriction fails the *Central Hudson* test. *Id.*

Here, the FODMAP-related speech at issue is about lawful activity, and the speech is not inherently misleading, so the government cannot meet its burden to show that the speech fails *Central Hudson*'s threshold question. As for the rest of the test, the government cannot meet its burdens to show that the Ban directly advances a substantial interest and is not more extensive than necessary. Therefore, the government likely cannot meet multiple *Central Hudson* burdens, let alone all of them, and Plaintiffs are likely to succeed on the merits of their claims. Each *Central Hudson* prong will be addressed in turn, beginning with its threshold question.

1. <u>The FODMAP-related speech at issue concerns lawful activity, is verifiably true, and is not inherently misleading.</u>

No federal statutes or regulations prohibit the sale of low-FODMAP foods. Therefore, the only relevant question under *Central Hudson*'s threshold prong is whether the speech is inherently misleading.[3] Speech that is inherently misleading "is not entitled to constitutional protection," but "speech that is only potentially misleading must pass the three-prong *Central Hudson* test." *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1238 (11th Cir. 2017). Whether speech is inherently misleading is merely a question of what the words mean on their face, in plain language. *See Peel*, 496 U.S. at 103–05. Here, "Low-FODMAP" plainly means that the labeled food is low in FODMAPs. Therefore, as a matter of law, "low-FODMAP" is not inherently misleading.

Nor does the fact that the government maintains a list of preapproved nutrient

---

[3] Some cases also discuss actually misleading speech, but that aspect is not relevant here because no one has ever been misled by Gourmend's labels. Vakil decl. ¶ 32.

content claims render any nutrient content claims that *are not* on the list inherently misleading. *See Ocheesee Creamery*, 851 F.3d at 1238. In *Ocheesee Creamery*, the Eleventh Circuit held that Florida could not prohibit a dairy creamery from truthfully describing its all-natural skim milk as "skim milk" merely because the state had defined "skim milk" as skim milk with Vitamin A added. *Id.* at 1232, 1240. In deciding that the dairy's speech was not inherently misleading, the court explained that to hold that "any use of [a] term inconsistent with the state's preferred definition [of that term] is inherently misleading" would "eviscerate *Central Hudson*, rendering all but the threshold question superfluous," because "[a]ll a state would need to do in order to regulate speech would be to redefine the pertinent language in accordance with its regulatory goals." *Id.* at 1238.

Yet that is essentially what the Ban does here. The federal government has created a universe of claims that it considers non-misleading and then deems automatically misleading any claims inconsistent with that defined universe of terms, no matter how factual or non-misleading those claims may be. That is not how free speech works. The creamery calling its product "skim milk" was "merely a statement of objective fact," regardless of Florida's regulatory definition to the contrary. *Id.* at 1239. So are the low-FODMAP statements at issue here, regardless of the Ban. The low-FODMAP statements are therefore not inherently misleading.

2. <u>The Ban does not directly advance a substantial government interest.</u>

Because Gourmend's verifiably true FODMAP-related nutrient content claims are not inherently misleading, Defendants' affirmative burden becomes to show that Defendants have a substantial interest in prohibiting this speech, that the Ban directly furthers that substantial interest, and that the Ban "is not more extensive than is necessary to serve that interest." *Cent. Hudson*, 447 U.S. at 566.

At no point have Defendants attempted to offer a legitimate government interest for the Ban, let alone a substantial one. Moreover, the Ban is completely

redundant to other provisions not challenged here that already prohibit misleading labels. *See* 21 U.S.C. § 343(a)(1), (b), (c), (d). Indeed, the Ban appears to exist solely for the constitutionally illegitimate purpose of mandating that even when commercial speech complies with the other provisions prohibiting misleading speech, truthful, non-misleading speech is still prohibited anyway.

It is therefore unsurprising that every government official responsible for enforcing the Ban would apparently be fine with allowing this FODMAP-related information to be provided if only it were allowed by federal law. *See* Vakil decl. ¶ 48.

Therefore, Defendants will be hard-pressed to show that the Ban furthers any legitimate interest at all, let alone meet Defendants' heavy burden to provide "real," non-speculative evidence showing that the Ban directly advances a substantial one. *See Junior Sports Mags.*, 80 F.4th at 1117 (quoting *Edenfield*, 507 U.S. at 770–71); *see also Ibanez*, 512 U.S. at 145 ("concern about the possibility of deception in hypothetical cases is not sufficient").

The government cannot meet its evidentiary burden here. First, it is axiomatic that consumers are not *deceived* by accurate information. That is why it makes sense that Ketan and Gourmend have never received a complaint of confusion. Vakil decl. ¶ 32. Moreover, even if the facts were different here, the Supreme Court has expressly explained that the government is not allowed to take the paternalistic approach of keeping consumers in the dark for their own good. *See Rubin*, 514 U.S. at 497 (Stevens, J., concurring); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (plurality op.).

Second, the Ban actually harms consumers by increasing confusion rather than reducing it. This is because different parts of the same ingredient can be low-or high-FODMAP, and these differences are not described in ingredient lists. Vakil decl. ¶ 10. But when sellers want to voluntarily remedy this confusion, the Ban forbids them from doing so. A speech restriction that undermines the government's own interest cannot be said to directly advance it. *See Rubin*, 514 U.S. at 489–90.

In any event, whatever evidence the government attempts to produce would need to show that the confusion stems from labeling, not from just anywhere, while also showing that the Ban is consistent with Defendants' approach of allowing this same information to be provided elsewhere. On this score, *International Dairy Foods Ass'n v. Boggs* is instructive. 622 F.3d 628, 638–39 (6th Cir. 2010). There, the Ohio Department of Agriculture promulgated a rule banning certain "composition claims" on milk labels and argued that consumer comments that ODA received in the rulemaking process evidenced consumer confusion. *Id.* at 638–39. But the Sixth Circuit found that "few if any of [the] commenters indicated that their confusion stemmed from the product labels." *Id.* Ultimately, this "weak" evidence of consumer deception or confusion meant the State's proof "[fell] far short of establishing that Ohio consumers [had] been misled by dairy-product labeling." *Id.* The Sixth Circuit then struck down the ban under *Central Hudson* because any potential consumer confusion could be alleviated by a disclosure requirement. *Id.* at 639–40. Here, it is highly unlikely that the government has evidence showing *any* potential confusion caused by FODMAP-related claims, much less only when the claims appear on *labels*. Therefore, the Ban does not directly advance a substantial government interest.

3. <u>The Ban is more extensive than necessary.</u>

Even if evidence of potential confusion existed (which it does not) and even if the Ban improved consumer understanding (which it also does not), the government still could not meet its burden under *Central Hudson*'s final prong because the Ban is not tailored to that purpose. Most tellingly, far from restricting no more speech than necessary to further its interests, the law flatly bans *all* speech on food labels about FODMAP content. This type of approach is irreconcilable with the First Amendment, under which it is preferrable to cure potential confusion through more speech instead of less. This is also why courts sometimes go straight to *Central Hudson*'s final prong to hold speech bans unconstitutional without even needing to go through the other prongs. *See Ocheesee Creamery*, 851 F.3d at 1240.

Under *Central Hudson*, unless the government can provide real, non-speculative, concrete evidence establishing that potential confusion cannot be remedied by additional speech or by any other "means short of a blanket ban," then that ban is more extensive than necessary as a matter of law. *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 648 (1985).

Though it is Defendants, not Plaintiffs, who are mandated to "consider[] alternatives" to speech restrictions, *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021), Plaintiffs note that, to protect consumers from deception or confusion, the government has numerous alternatives available. Most obviously, Defendants could enforce the other laws that already prohibit misleading speech. Or, if Defendants ever suspect that a label is actually misleading, then Defendants could require a seller to prove the accuracy of its claims with supporting documentation at that point. And those are just two of many constitutionally preferrable alternatives to the Ban, none of which would even require Defendants to radically reimagine their enforcement processes. These alternatives would better serve First Amendment values while supporting, rather than undermining, the "general thrust" of federal food labeling policy, which "appears to favor greater disclosure of information, rather than less." *See Rubin*, 514 U.S. at 484 (citing federal nutrition labeling policy).

## II. Plaintiffs have established irreparable injury in the absence of a preliminary injunction.

Once this Court determines that Plaintiffs have a substantial likelihood of success on the merits, this means that Plaintiffs are also suffering per se irreparable harm because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1024 (9th Cir. 2025) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Although that alone would be sufficient here, it is also worth noting that Michelle's informational injury is palpable every time she goes to a grocery store or looks into her refrigerator or pantry. Przybocki decl. ¶ 12. And this injury is not a

mere inconvenience or frustration for her; it has critical consequences for her ability to avoid pain, maintain her physical health, and follow her doctors' medical advice. Meanwhile, for years, Ketan and Gourmend have delayed plans for additional speech and additional low-FODMAP food products under the specter of FDA's threatened enforcement of the Ban against them. Vakil decl. ¶¶ 39–41. Without preliminary injunctive relief, those constitutionally impermissible delays will continue.[4]

**III. The balance of the equities tips in Plaintiffs' favor, and the public interest will be served by a preliminary injunction.**

The third and fourth factors—balance of equities and public interest—also favor Plaintiffs. "When a party raises serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in its favor." *X Corp. v. Bonta*, 116 F.4th 888, 904 (9th Cir. 2024) (cleaned up). And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019); *Doe v. Harris*, 772 F.3d at 583. That is particularly true here where the Ban is harming both the First Amendment rights and the physical health of tens of millions of Americans. Vakil decl. ¶ 12.

**IV. Complete relief for Plaintiffs requires an injunction that applies to Gourmend and all low-FODMAP food producers.**

The scope of the injunction should offer complete relief to Plaintiffs. *Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025). As the Supreme Court recently clarified, "'[c]omplete relief' is not synonymous with 'universal relief.'" *Id.* at 851. Rather, under the "complete-relief principle," "the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is

---

[4] For this same reason, even if, *arguendo*, the Court were to disagree with Plaintiffs as to likelihood of success on the merits, the Court should still issue the preliminary injunction because the balance of the hardships tips sharply in Plaintiffs' favor and there are at least serious questions going to the merits. *See Shell Offshore, Inc., v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013).

whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 852. That is all Plaintiffs ask for here. As *CASA* contemplates, "the court's injunction [here] might have the *practical effect* of benefiting nonparties." *Id.*; *see also Washington v. Trump*, 145 F.4th 1013, 1038 (9th Cir. 2025) (the *CASA* case itself, on remand, extending "universal" preliminary relief to all states); *Chi. Women in Trades v. Trump*, 2025 WL 3034056, at *5 (N.D. Ill. Oct. 30, 2025) (affirming, after *CASA*, that the nationwide scope of a First Amendment preliminary injunction was necessary for plaintiff's complete relief because it "protect[ed plaintiff's] ability to partner and collaborate with others").

Here, complete relief for Ketan and Gourmend is straightforward: Defendants must be enjoined from enforcing the Ban against Ketan and Gourmend's truthful, verifiable, factual on-label statements about the FODMAP content in Gourmend products. Complete relief for Michelle, however, must necessarily extend further.

As the Ninth Circuit held, "[i]n addition to alleging that [Ketan] and Gourmend are willing speakers, [Michelle] also plausibly alleges that there are other food companies that would like to label their products with FODMAP levels but refrain from doing so due to the challenged regulations." *Przybocki*, 185 F.4th at 900. In coming to this conclusion, the panel noted that it is both plausible and logical that "food producers are not currently labeling their products with FODMAP information because they understand the regulations to prohibit such labels." *Id.* at 900. Thus, once producers are free to speak, market dynamics and the profit motive will start a predictable chain of events that will lead to FODMAP-related nutrient content claims on low-FODMAP foods by producers, whoever and wherever they are. *See id.* at 900–01 (citing *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025)).

This point was also recently addressed by the Ninth Circuit in *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162 (9th Cir. 2025), *cert. granted in part on other grounds*,

146 S. Ct. 2812 (2026).[5] There, a video game app developer named Epic ran its own digital content store and sued Apple, alleging anticompetitive practices related to Apple's digital store. *Id.* at 1172. The district court enjoined Apple from prohibiting Epic *and all app store developers* from designing elements in their apps that would "encourage customers to make purchases from the developers rather than Apple." *Id.* After the Supreme Court issued its decision in *CASA*, Apple moved for dissolution of the injunction, arguing it was impermissibly nationwide under *CASA*. *Id.* at 1192. The Ninth Circuit disagreed and upheld the injunction partly on the basis that the enjoined conduct generally "prevent[ed] other apps' users from becoming would-be Epic Games Store consumers." *Id.* As such, the injunction, in reaching unnamed, third-party developers, was "molded to 'the necessities of [Epic's] particular case.'" *Id.* at 1193 (quoting *CASA*, 606 U.S. at 854.) It gave Epic complete relief because it "aim[ed] to restore the information to consumers that is necessary to foster competition." *Id.* A similar market dynamic is at play here, except that instead of standing to gain customers if the injunction incidentally benefits third parties, Michelle stands to gain vital information about what is in the food she buys.

In crafting complete relief for Michelle here, it is important to recognize two aspects of how sellers operate. First, sellers purchase their packaging in bulk. Vakil decl. ¶ 51. As a result, many sellers are unwilling to create one-off packages for certain states or markets. *Id.* Second, a substantial portion of the sales are online, and again, sellers typically are unwilling to create one-off, location-specific websites for online sales and distribution to specific cities and not others. *Id.* at ¶ 52.

This means that the only way to grant complete relief to Michelle is to allow all sellers who sell low-FODMAP foods in her area to not only provide this information on their packages sold in Las Vegas (regardless of whether those sales are in stores, online, or through any other lawful method) but everywhere else in the nation where

---

[5] The remedy at issue in *Epic Games* was a permanent injunction, but the parties and court relied on *CASA*'s holdings and reasoning. *Epic Games*, 161 F.4th at 1192.

that particular seller sells that particular product. *See CASA*, 606 U.S. at 852. Otherwise, many of the sellers who otherwise would have provided this information to Michelle will refrain from doing so, and she will not receive complete relief. Vakil decl. ¶¶ 51–52; *CASA*, 606 U.S. at 852. Although complete relief to Michelle "might have the *practical effect* of benefiting nonparties, 'that benefit [is] merely incidental'" to complete relief for Michelle. *CASA*, 606 U.S. at 852 (quoting *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring)).

**V. No bond should be required.**

Plaintiffs respectfully ask this Court to waive the bond requirement, as the injunction would merely stop ongoing First Amendment violations and Defendants would suffer no financial harm. *See California ex rel. Van de Kamp v. Tahoe Reg'l Plan. Auth.*, 766 F.2d 1319, 1325–26 (9th Cir. 1985) (discussing discretionary bond); *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (waiving bond for preliminary injunction in First Amendment challenge).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court preliminarily enjoin the government's prohibition on truthful, verifiable FODMAP-related nutrient content claims for the pendency of this case.

Dated: October 16, 2026

Joel Z. Schwarz (NV Bar No. 9181)
SALTZMAN MUGAN DUSHOFF
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500
Email: jschwarz@nvbusinesslaw.com

/s/ Justin M. Pearson
Justin M. Pearson (FL Bar No. 597791)*
INSTITUTE FOR JUSTICE
2 S. Biscayne Boulevard, Suite 3180
Miami, Florida 33131
Tel: (305) 721-1600
Email: jpearson@ij.org

Paul M. Sherman (VA Bar No. 73410)*
Elizabeth L. Sanz (CA Bar No. 340538)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, Virginia 22203
Tel: (703) 682-9320
Email: psherman@ij.org

bsanz@ij.org

*Admitted *pro hac vice*

*Counsel for Plaintiffs*